**Electronically Filed
Supreme Court
SCWC-23-0000383
30-SEP-2025
04:08 PM
Dkt. 30 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

---

KIA'I WAI O WAI'ALE'ALE, an unincorporated association;
FRIENDS OF MĀHĀ'ULEPŪ, a nonprofit corporation,
Petitioners and Respondents/Plaintiffs-Appellants/Appellees,

vs.

BOARD OF LAND AND NATURAL RESOURCES, STATE OF HAWAI'I,
Respondent and Petitioner/Defendant-Appellee/Appellant,

and

KAUA'I ISLAND UTILITY COOPERATIVE,
a domestic cooperative association,
Respondent/Defendant-Appellee/Appellee.

---

SCWC-23-0000383

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-23-0000383; CASE NO. 1CCV-22-0000015)

SEPTEMBER 30, 2025

PART I (BY: GINOZA, J., WITH WHOM RECKTENWALD, C.J., McKENNA,
EDDINS, AND DEVENS, JJ., JOIN)

PART II (BY: DEVENS, J., WITH WHOM RECKTENWALD, C.J., McKENNA, AND
EDDINS, JJ., JOIN; AND GINOZA, J., DISSENTING)

OPINION OF THE COURT BY GINOZA, J.

This agency cross-appeal arises out of a dispute over the denial of contested case hearings and the continuation of a revocable water permit on the island of Kaua'i for the years 2021 and 2022, after the permit had been continued for almost two decades.

In 2003, Respondent-Defendant State of Hawai'i Board of Land and Natural Resources (**Board** or **BLNR**) issued Revocable Permit No. S-7340 (**permit** or **RP**) to Respondent/Defendant Kaua'i Island Utility Cooperative (**KIUC**), to enter and use State lands in the Līhu'e-Kōloa Forest Reserve to divert water to power two hydropower plants.  KIUC sought and was granted continuation of the permit annually from 2003 through 2022.

In December 2020 and 2021, Petitioners-Plaintiffs Kia'i Wai o Wai'ale'ale, an unincorporated association (**Kia'i Wai**), and Friends of Māhā'ulepū, a nonprofit corporation (**Friends**) (collectively, **Petitioners**) sought contested case hearings on the permit and challenged continuation of the permit for 2021 and 2022.  Each time, the Board denied Petitioners' requests for contested case hearings and then granted continuation of the permit.

Petitioners appealed to the Circuit Court of the First Circuit (**Environmental Court**),[1] challenging the Board's denial of their requests for contested case hearings on the 2021 and 2022 permits, the grant of the permits, and asserting violations of the Board's duty as trustee of Hawaiʻi's public trust resources.

In 2022, during the pendency of the appeal before the Environmental Court, KIUC did not seek continuation of the permit, and the permit expired on December 31, 2022.

On April 21, 2023, the Environmental Court issued its "Findings of Fact, Conclusions of Law and Decision and Order" (**Environmental Court Decision**). The Environmental Court found that, in Petitioners' eleven declarations supporting their requests for contested case hearings, Kānaka Maoli members of the groups attested to impacts of the permits and the continuing diversion of affected streams on their exercise of native Hawaiian traditional and customary rights, and the disrepair of the diversion systems. The Environmental Court concluded, among other things, that: Petitioners' appeal fell under an exception to the mootness doctrine; Petitioners had protected property interests under article XII, section 7 of the Hawaiʻi Constitution (traditional and customary rights); the Board erred

_____

[1]     The Honorable John M. Tonaki presided. Prior to Judge Tonaki, the Honorable Jeffrey P. Crabtree presided over this case from January 6, 2022, until on or around October 25, 2022.

3

in denying Petitioners' requests for contested case hearings in violation of Petitioners' due process rights; and the Board's failure to enter findings of fact and conclusions of law made it impossible to determine whether the Board's continuation of the permit "served the best interests of the State" pursuant to Hawaiʻi Revised Statutes (**HRS**) § 171-58 (Supp. 2021).  The Environmental Court vacated and reversed the Board's 2021 and 2022 permit continuations.

The Board appealed to the Intermediate Court of Appeals (**ICA**), which issued a Summary Disposition Order (**SDO**) vacating and reversing the Environmental Court's decision.  Kiaʻi Wai o Waiʻaleʻale v. Bd. of Land & Nat. Res., No. CAAP-23-0000383, 2024 WL 3221038, at *1 (Haw. App. June 28, 2024) (SDO).  The ICA concluded that Petitioners had standing under article XI, section 9 of the Hawaiʻi Constitution (clean and healthful environment), as defined by HRS § 171-55 (2011) and HRS chapter 343 (2010), but that Petitioners' appeal was nonetheless moot and no exceptions to the mootness doctrine applied.  Id. at *2-3.  The ICA also held that the Environmental Court erred in concluding that constitutional due process required a contested case hearing on the 2021 RP because the record did not include a transcript evidencing the procedures "actually used" by BLNR at the December 2020 public meeting concerning the 2021 permit.  Id. at *2.  The ICA further held the Environmental Court

4

exceeded its jurisdiction by reviewing whether the Board correctly granted the 2021 and 2022 permits under HRS § 171-58. Id. at *4.

We accepted both the Petitioners' and the Board's cross-applications for certiorari. Petitioners challenge the ICA's rulings that their claims are moot and no exceptions to the mootness doctrine apply; that they are not entitled to contested case hearings; and that the Environmental Court exceeded its jurisdiction when it reviewed whether the Board properly granted the 2021 and 2022 RPs. The Board challenges the ICA's ruling that Petitioners have standing under article XI, section 9 of the Hawai'i Constitution, when the Environmental Court found standing under article XII, section 7 of the Hawai'i Constitution (traditional and customary rights) and there was no plain error as to the type of standing interest involved.

We conclude in Part I of this opinion that: exceptions to the mootness doctrine apply to sustain Petitioners' appeal; Petitioners have standing based on their asserted injury to traditional and customary rights as found by the Environmental Court; and Petitioners hold cognizable property interests under article XII, section 7 of the Hawai'i Constitution, and contested case hearings were required to protect their due process rights.

Part II of this opinion addresses whether the Environmental Court exceeded its jurisdiction under HRS § 91-14

5

(2012 & Supp. 2022) when the court noted the Board failed to issue findings and conclusions on the continuation of the RPs pursuant to HRS § 171-58(c). The majority in Part II concludes the Environmental Court did not exceed its jurisdiction.

The combined effect of Part I and Part II of this opinion is that the ICA's Judgment on Appeal is vacated, and the case is remanded to the Board for further proceedings consistent with this opinion.

## I.    BACKGROUND

### A.    Factual Background

The factual background is based on unchallenged findings by the Environmental Court.

On August 11, 2003, the Board issued the permit to KIUC. The permit allowed KIUC to enter and use, on a month-to-month basis, water emanating from, and the water transmission system situated at, the Līhuʻe-Kōloa Forest Reserve in Līhuʻe, Kauaʻi (**Blue Hole diversion**). The permit also allowed KIUC to use the Blue Hole diversion to divert, take, draw off, conduct away, and dispose of government-owned water, and use, operate, repair, and maintain a portion of an existing government-owned water transmission infrastructure system including the Blue Hole diversion for the purpose of generating hydroelectric power with KIUC's two hydroelectric plants, the Upper and Lower Waiahi Hydropower Plants (collectively, the **Hydropower Plants**).

6

Under the RP, KIUC was permitted to divert approximately 40 million gallons of water per day from the Blue Hole diversion to supply its Hydropower Plants.  In exchange for the permitted uses under the RP, KIUC paid a monthly rent and was required to comply with numerous conditions.  Diverted water was not returned to the streams of origin, but rather to Grove Farm lands for agriculture and the Kapaia Reservoir, which is the water source for Grove Farm's Waiahi surface water treatment plant.

KIUC sought and was granted continuation of the permit annually from 2003 through 2022.  In 2004, in addition to seeking continuation of the RP, KIUC applied to the Board for a 65-year long-term lease of the same water resources.  KIUC's long-term lease application process remains ongoing.

In 2019, portions of the Blue Hole diversion siphon system were damaged and became inoperable.  In June 2019, a large tree fell on the siphon structure causing a breach in the ditch, resulting in KIUC closing two diversions and seeking bids for repair of the siphon.  Two months later, a landslide destroyed the siphon structure completely, resulting in a total breach of the ditch system.  KIUC continued to maintain the diversions, ditch infrastructure, and gauging equipment associated with the permit to avoid or minimize further degradation of the diversion system, but did not resume siphon

repairs because of safety concerns and the significant cost of repairs.

## B.    Procedural Background

### 1.    Agency Proceedings

On or around December 11, 2020, the Board held a public meeting to consider the continuation of KIUC's RP for 2021 (**December 11, 2020 Public Meeting**).  At the December 11, 2020 Public Meeting, Petitioners opposed the Board's proposed grant of the permit, and orally requested a contested case hearing.[2]  The Board subsequently granted the continuation of the RP for 2021 (**2021 RP**), and orally rejected Petitioners' requests for a contested case hearing.  On December 19, 2020, Petitioners filed written petitions for a contested case hearing on the 2021 RP (**December 19, 2020 petitions**)[3] asserting that KIUC's unrepaired diversion structures were resulting in impacts to stream health and biota; wasting of water; and ongoing and inadvertent diversion of water, resulting in direct violations of Petitioners' constitutionally protected exercise of native

---

[2]    There appears to be no transcript in the record of the Board's December 11, 2020 Public Meeting.

[3]    Petitioners assert they submitted written petitions – after the Board denied their oral requests for a contested case hearing at the December 11, 2020 Public Meeting – to conform with Board rules and this Court's decision in Hui Kakoʻo Aina Hoʻopulapula v. Bd. of Land & Nat. Res., 112 Hawaiʻi 28, 40-42, 143 P.3d 1230, 1242-44 (2006), abrogated on other grounds by, Tax Found. of Haw. v. State, 144 Hawaiʻi 175, 439 P.3d 127 (2019) (requiring petitioner to file a written petition no later than ten days following Board denial of request for contested case in order to reserve ability to appeal pursuant to HRS § 91-14).

Hawaiian traditional and customary practices, under article XII, section 7 of the Hawaiʻi Constitution,[4] and constitutionally protected right to a clean and healthful environmental under article XI, section 9 of the Hawaiʻi Constitution.[5]  Each petition included eleven signed declarations by Petitioners' members.

Nearly one year later, on December 10, 2021, the Board held a public meeting (**December 10, 2021 Public Meeting**) to consider, *inter alia*: (1) Petitioners' December 19, 2020 petitions; and (2) KIUC's request for continuation of the RP for 2022.[6]

---

[4]     Article XII, section 7 of the Hawaiʻi Constitution provides:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

[5]     Article XI, section 9 of the Hawaiʻi Constitution provides:

> Each person has the right to a clean and healthful environment, as defined by laws relating to environmental quality, including control of pollution and conservation, protection and enhancement of natural resources.  Any person may enforce this right against any party, public or private, through appropriate legal proceedings, subject to reasonable limitations and regulation as provided by law.

[6]     The published agenda for the December 10, 2021 Public Meeting, which appears in the record, listed the following relevant agenda items for the Board's consideration:

> **D.  LAND DIVISION**
>
> 1.  Denial of Petitions for Contested Case Hearing filed by [Plaintiffs] on December 19, 2020, Regarding December 11, 2020, Agenda Item D-5,

Prior to the December 10, 2021 Public Meeting, the State of Hawai'i, Department of Land and Natural Resources (**Department** or **DLNR**) provided staff recommendations to the Board regarding its consideration of the agenda items associated with the permit. The Department recommended that the Board deny Petitioners' December 19, 2020 petitions for a contested case hearing. The Department reasoned that Petitioners failed to identify a constitutionally cognizable property interest, and even if they did, they were not entitled to a contested case hearing because their allegedly affected interests are "not substantial in character . . . or the specific injury to that interest is not clearly articulated in the petition[s][,]" the risk of erroneous deprivation is "minimal," and the burden on the government interest is great.

As to Petitioners' asserted interests, the Department noted that "[w]hile traditional and customary practices are recognized as a constitutionally cognizable property interest[,] the Petitioners do not identify any such practices as being

---

Continuation of Revocable Permit S-7340 to [KIUC] for Water Use.

Pursuant to Section 92-5(a) (4), [(HRS)], the Board may go into Executive Session in order to consult with its attorney on questions and issues pertaining to the Board's powers, duties, privileges, immunities and liabilities.

2. Holdover/Continuation of Revocable Permits for Water Use on the Islands of Hawai'i and Kaua'i.

affected nor present any specific claims of injury to traditional and cultural practices as being affected . . . as a result of the Board's action."

The Department also recommended that the Board continue KIUC's RP for 2022, with an exemption from HRS Chapter 343 environmental review. The Department acknowledged that there "continue to be complaints that KIUC is failing to comply with the requirements of the [RP][,]" and that the Department had received public comments focusing on "an alleged failure by KIUC to comply with various regulatory requirements to obtain a lease of water rights, the initial approval of the permit being based on a non-consumptive use which was incorrect, such consumptive use of the water being inconsistent with the public trust, and the diversion of water by KIUC resulting in a negative impact on the downstream environment." The Department reiterated representations by KIUC "that no water is currently being diverted at North Fork River and Waikoko Stream due to damage to the diversions[,]" but stated that even though KIUC was not diverting water, the Department's "staff concurs with KIUC's request and recommends that the revocable permit be continued to allow KIUC to continue to conduct maintenance [on] the ditch infrastructure and repair actions at their discretion when practicable." With respect to the Department's recommendation that the permit be exempt from HRS Chapter 343

environmental review, the Department reasoned that the permitted diversions would not have "significant impact" on a "particularly sensitive environment" because "[r]evocable permits are temporary in nature."

Petitioners also submitted written testimony for the December 10, 2021 Public Meeting, dated December 5, 2021.  This written testimony asked the Board to (1) reject the Department's recommendation to deny Petitioners' December 19, 2020 petitions for a contested case hearing on the 2021 RP; (2) reject the Department's recommendation and KIUC's request for continuation of the proposed 2022 RP; and (3) grant Petitioners' new request for a contested case hearing on the proposed approval of KIUC's 2022 RP.  Petitioners also asserted that the permit should not be exempt from HRS Chapter 343 environmental review. Petitioners noted that the Board has been continuing the "temporary" permit annually since 2003, and that "[t]he full extent of the environmental and cultural impact of the Board's decades-long permitting of diversions of these streams should be considered as part of [the] Board's decision[.]"

At the December 10, 2021 Public Hearing, the Board heard brief testimony from the Department, Petitioners, KIUC, and members of the public.  KIUC and Petitioners asserted conflicting factual accounts of the effects of KIUC's diversion structures, including whether or not KIUC's diversion structures

were inadvertently continuing to divert water and causing portions of dry streambed.  Petitioners orally requested a contested case hearing on the Board's proposal to grant KIUC's RP continuation for 2022.  At the meeting, the Board: (1) denied Petitioners' December 19, 2020 petitions; (2) denied Petitioners' oral request for a contested case hearing on the proposal to continue KIUC's RP for 2022; and (3) granted KIUC's RP continuation for 2022 (**2022 RP**) (collectively, the **Board's December 10, 2021 decisions**).  On December 20, 2021, Petitioners submitted written contested case hearing petitions (**December 20, 2021 petitions**) asserting largely the same overarching arguments raised in their December 19, 2020 petitions, with similar declarations attached.

####    2.    Environmental Court Proceedings

On January 6, 2022, Petitioners filed their notice of appeal to the Environmental Court pursuant to HRS § 91-14, challenging the Board's December 10, 2021 decisions.  In the Environmental Court, Petitioners asserted that the Board reversibly erred by: (1) denying Petitioners' December 2020 and December 2021 requests and petitions for contested case hearings on the 2021 and 2022 RPs, violating their constitutional due process rights; (2) granting the 2021 and 2022 RPs; and (3) violating Petitioners' substantive and procedural rights, as

13

well as the Board's duties as trustee of Hawai'i's public trust resources.

Amidst the proceedings before the Environmental Court, KIUC did not seek continuation of the permit, and the permit expired on December 31, 2022. Thereafter, the Environmental Court requested that the parties submit supplemental briefing on the issue of mootness.

On April 21, 2023, the Environmental Court Decision was entered. The Environmental Court issued a total of forty-two findings of fact (**FOF**).

The Environmental Court found, among other things, that:

> 18. Plaintiff . . . Kia'i Wai[,] is an unincorporated association based on Kaua'i and composed of Kaua'i residents who use and have interests in freshwater resources of the island of Kaua'i, including Wai'ale'ale, Waikoko, Waiahi, 'Ili'ili'ula, I'ole, Hanamā'ulu, Waiaka, and Wailua streams.
>
> 19. Kia'i Wai support a mission of protecting the waters of Wai'ale'ale and its tributaries as public trust resources for all communities of Kaua'i. Kia'i Wai use and enjoy the environs, cultural and natural resources, streambanks, and waters of Wai'ale'ale and its tributaries for the exercise of native Hawaiian traditional and customary rights, traditional healing, gathering resources supported by Wai'ale'ale waters, recreation, research on native species, environmental uses, uses on Department of Hawaiian Home Lands [(**DHHL**)]) and for DHHL beneficiaries, aesthetic purposes adversely impacted by Defendants' diversions, and as KIUC ratepayers and County of Kaua'i Department of Water [(**KDOW**)] customers.
>
> 20. Plaintiff . . . [Friends,] is comprised of a group of concerned citizens who are contributing their time and talents to protect the natural beauty of the pristine coastal valley in Kaua'i. Like Kia'i Wai, [Friends] also includes Kaua'i residents who use and have interests in

14

freshwater resources of the island of Kaua'i, including Wai'ale'ale, Waikoko, Waiahi, 'Ili'ili'ula, I'ole, Hanamā'ulu, Waiaka, and Wailua streams.

21.     The mission of [Petitioners'] groups include the preservation and restoration of stream flow, particularly in areas markedly damaged as the areas of the Wai'ale'ale and Waikoko stream diversions which prevents the natural enjoyment of the stream, impacting hunters, gatherers and other cultural practices of their community which also includes the sacred historical practices and recognition of the Blue Hole as a natural Heiau.

.  .  .  .

34.     Neither the 2021 nor the 2022 RP S-7340 renewals were issued with accompanying findings of fact and conclusions of law by the Board addressing how continuing the permit was in the best interests of the State for those calendar years, and whether continuing the permit complied with the public trust doctrine.

.  .  .  .

37.     In [Petitioners'] eleven (11) declarations submitted in support of their requests for contested case hearings in 2020 and 2021, Kānaka Maoli members of [Petitioners'] groups attested to impacts of the Board's approval of the Revocable Permits ("RPs") to KIUC on their exercise of native Hawaiian traditional and customary rights.  A cultural practitioner who regularly hikes the areas surrounding Wai'ale'ale and Waikoko, wrote specifically about the "Chief's trail" used by high chiefs to check on all of the ahupua'a and to "walk the trails and the passages of [his] elders."

38.     Kānaka Maoli members of [Petitioners'] groups attested to the impacts of the continuing diversion of Wai'ale'ale and Waikoko streams on their traditional and customary cultural and recreational practices and the disrepair of the diversion systems.

39.     [Petitioners'] members include Hawaiian cultural practitioners who support [Petitioners'] mission to preserve water, prevent waste and protect natural stream flow and aquifer recharge as well as to mālama 'āina affected by the "Blue Hole diversions", which impact their cultural practices of hunting, gathering, and hiking. [Petitioners'] Kānaka Maoli members have found culturally and archaeologically significant sites while hiking along historic trails, including the Chief's trail.  Blue Hole, the area of the diversions is also a sacred wahi pana associated with sacred historical practices.

The Environmental Court issued a total of twenty-six conclusions of law (**COL**).  The Environmental Court concluded, in relevant part, that: (1) the declarations submitted by the Petitioners established the effects of the Blue Hole diversion on Hawaiian traditional and customary practices including "oli, healing, pule, hula, gathering of native instream species such as hīhīwai, 'ōpae, 'o'opu, and plants, hi'uwai, mālama 'āina, religious rites, subsistence gathering, and other practices" (**COL 5**); (2) the exercise of Hawaiian traditional and customary practices constitute property interests that require due process protections (**COL 6**), such that Petitioners were entitled to a contested case hearing on continuation of the permit, as a matter of law (**COL 7**); (3) the Board was required to specify how the continuation of the permit was "under those conditions which will best serve the interests of the State[,]" pursuant to HRS § 171-58(c) (**COL 13**); and (4) the Board's failure to issue findings of fact and conclusions of law regarding its approval of the permit, pursuant to Carmichael v. Bd. of Land & Nat. Res., 150 Hawai'i 547, 506 P.3d 211 (2022), "made it impossible to determine whether the approval of [the permit] 'served the best interests of the State' pursuant to HRS § 171-58(c), particularly where the original stated purpose of the diversion, the operation of hydroelectric power plants, cease[d] to exist after the damage to the ditch in 2019" (**COLs 14-15**).

With respect to the issue of mootness, the Environmental Court concluded that even though the permit has expired, the "capable of repetition yet evading review" exception to the mootness doctrine applies to Petitioners' appeal. The Environmental Court also concluded that "[t]his appeal presents a highly public issue of whether judicial review is available for the Board's denial of contested case requests on KIUC's diversions of the waters of Wai'ale'ale and Waikoko, environmental review for the same, and the Board's public trustee obligations attending its decision."

Based on its findings and conclusions, the Environmental Court held that:

> 1. The Board's denial of [Petitioners'] requests for contested cases on 2021 and 2022 revocable permits issued to KIUC was in violation of HRS § 91-1 and [Petitioners'] due process rights; and
>
> 2. The Board's failure to enter findings of fact or conclusions of law resulted in an inability to determine whether the Board properly exercised the discretion vested in it by the constitution and the statutes in approving the permits.

The Environmental Court ordered the Board's approvals of the 2021 and 2022 RPs be vacated and reversed.

On May 8, 2023, the Environmental Court entered its Final Judgment reversing and vacating the Board's decisions on December 11, 2020, and December 10, 2021, to deny Petitioners' requests for contested case hearings and to reissue the permit.

17

### 3. ICA Proceedings

On June 7, 2023, the Board appealed to the ICA. There, the Board challenged Petitioners' standing; the Environmental Court's ruling that a contested case hearing was required to protect Petitioners' due process interests; and the Environmental Court's jurisdiction to reach the substantive question of whether the Board failed to issue findings and conclusions in approving the 2021 and 2022 RPs (as opposed to just whether contested cases were required).[7]

On June 28, 2024, the ICA issued its SDO vacating the Environmental Court Decision and reversing the Environmental Court's Final Judgment. Kia'i Wai o Wai'ale'ale, 2024 WL 3221038, at *1. The ICA held that:

(1) Petitioners had standing to appeal to the Environmental Court because they had property interests under article XI, section 9 of the Hawai'i Constitution, as defined by HRS § 171-55 and HRS Chapter 343, that were potentially injured by denial of contested case hearings and that could be remedied by favorable judicial action;

(2) for the 2021 RP, the Environmental Court erred by concluding that due process required a contested case hearing because the record did not include a transcript showing

---

[7]    KIUC did not file any briefing to the ICA.

procedures used by BLNR in the December 11, 2020 Public Meeting, and thus Petitioners failed to provide sufficient information for the ICA to balance the factors under Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 126-27, 424 P.3d 469, 481-82 (2018);

(3) for the 2022 RP, it is moot whether Petitioners were entitled to a contested case hearing and no exception to the mootness doctrine applied; and

(4) because BLNR's decisions to continue the RPs were made in public meetings and not contested cases, the Environmental Court exceeded its jurisdiction by concluding that BLNR's failure to issue findings of fact and conclusions of law made it impossible to determine whether continuation of the permit "served the best interests of the State" under HRS § 171-58(c).  Id. at \*2-4.

**4.    Certiorari Proceedings**

Petitioners challenge the ICA's rulings, asserting that: Petitioners' appeal remains justiciable despite the expiration of the permit, and even if Petitioners' appeal is deemed moot, exceptions to the mootness doctrine apply; the ICA had sufficient information in the record to assess whether the Board's public meeting procedures satisfied due process to protect Petitioners' constitutional due process rights; and the Environmental Court had jurisdiction to review whether the Board properly issued the 2021 RP and 2022 RP under HRS § 171-55.

19

The Board asserts that the ICA erred by holding that Petitioners established injury-in-fact standing due to property interests under article XI, section 9 (clean and healthful environment) as defined by HRS § 171-55 and HRS Chapter 343. The Board notes that the Environmental Court found and concluded Petitioners asserted injuries to their traditional and customary rights under article XII, section 7, no party challenged the Environmental Court's ruling on the alleged injuries involved, and the ICA did not contemplate or find plain error by the Environmental Court in this regard. The Board further asserts that, even if this court determines that Petitioners have alleged cognizable injuries, they lack standing because (1) they failed to demonstrate that the alleged harms are traceable to continuation of the RPs or how a contested case hearing would remedy their asserted interests, and (2) because Petitioners' injury is related to streamflow protection, their alleged injury is only redressable by the State of Hawai'i, Commission on Water Resources Management (**CWRM**), and not by the Board.

## II.  STANDARDS OF REVIEW

### A.  Mootness

Mootness is a question of law, which this court reviews *de novo*. See Cnty. of Hawai'i v. Ala Loop Homeowners, 123 Hawai'i 391, 403, 235 P.3d 1103, 1115 (2010), abrogated on other grounds by, Tax Found. of Haw. v. State, 144 Hawai'i 175,

20

439 P.3d 127 (2019); Sierra Club v. Dep't of Transp., 120 Hawaiʻi 181, 196, 202 P.3d 1226, 1241 (2009).

**B.    Jurisdiction**

"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard. Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action."  In re Kanahele, 152 Hawaiʻi 501, 509, 526 P.3d 478, 486 (2023) (quoting Lingle v. Haw. Gov't Emps. Ass'n, AFSCME, Local 152, 107 Hawaiʻi 178, 182, 111 P.3d 587, 591 (2005)).

**C.    Secondary Agency Appeals**

"Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal.  The standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision."  Flores, 143 Hawaiʻi at 120, 424 P.3d at 475 (citation omitted).  HRS § 91-14(g) provides:

> (g)    Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1)  In violation of constitutional or statutory provisions;
> >
> > (2)  In excess of the statutory authority or jurisdiction of the agency;

21

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91-14(g) (2012 & Supp. 2022).

**D. Constitutional Law**

"Questions of constitutional law are reviewed de novo, under the right/wrong standard." Carmichael, 150 Hawai'i at 560, 506 P.3d at 224 (quoting In re Gas Co., 147 Hawai'i 186, 198, 465 P.3d 633, 645 (2020)).

**E. Standing**

We review the issue of standing *de novo*. See Pub. Access Shoreline Haw. v. Haw. Cnty. Plan. Comm'n, 79 Hawai'i 425, 434, 903 P.2d 1246, 1255 (1995) (**PASH**).

> This court "evaluate[s] standing using the 'injury in fact' test requiring: (1) an actual or threatened injury, which, (2) is traceable to the challenged action, and (3) is likely to be remedied by favorable judicial action." [Kilakila 'O Haleakala v. Bd. of Land & Nat. Res., 131 Hawai'i 193, 204, 317 P.3d 27, 38 (2013) (**Kilakila**)] (internal quotation marks omitted). As we have noted, however, "where the interests at stake are in the realm of environmental concerns[,] we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements." Id. at 204-05, 317 P.3d at 38-39 (internal quotation marks omitted) (quoting Citizens for the Prot. of the N. Kohala Coastline v. County of Hawai'i, 91 Hawai'i 94, 100-01, 979 P.2d 1120, 1126-27 (1999)).

Cmty. Ass'ns of Hualalai, Inc. v. Leeward Plan. Comm'n, 150 Hawai'i 241, 258, 500 P.3d 426, 443 (2021) (**Hualalai**).

### III. DISCUSSION

Petitioners and the Board raise multiple questions for this court.  We conclude in Part I of this opinion that: (A) exceptions to the mootness doctrine apply; (B) Petitioners have standing based on asserted injuries to their traditional and customary rights affected by the permits; and (C) under Flores, 143 Hawaiʻi at 125-28, 424 P.3d at 480-83, which relies on Sandy Beach Def. Fund v. City Council of City of Honolulu, 70 Haw. 361, 377, 773 P.2d 250, 260 (1989), Petitioners have cognizable property interests under article XII, section 7 (traditional and customary rights) and a contested case hearing was required.

Part II of the opinion addresses whether the Environmental Court exceeded its HRS § 91-14 jurisdiction when noting that the Board did not follow statutorily required procedure pursuant to HRS § 171-58(c) when it acted to renew the RPs for 2021 and 2022.

### A.    Exceptions to Mootness Apply

We first address Petitioners' argument that the ICA erred by concluding that Petitioners' claims are moot and that no exceptions to mootness apply.  "Under the mootness doctrine, this court will generally refrain from deciding a case that has lost its character as a present, live controversy, and in which the reviewing court can no longer grant effective relief."

23

Carmichael, 150 Hawai'i at 560, 506 P.3d at 224 (citation and internal quotation marks omitted).

Relying on this court's opinion in Hualalai, Petitioners assert that even though the challenged permits have since expired, the case is not moot because of alleged disrepair, environmental degradation, and partial diversions of the stream caused by KIUC's unrepaired ditch structures that remain ongoing. Petitioners contend that they sought denial of the continued RPs due to KIUC's violations of the permit conditions requiring maintenance and repair.

In Hualalai, 150 Hawai'i at 253-54, 500 P.3d at 438-39, this court held that an appeal retained its vitality because it possibly afforded an effective remedy where, although a special permit application had been withdrawn, the appellant had an interest in arguing the opposing parties' construction activity exceeded its other permits and thus required an additional special permit. As this court explained in Hualalai:

> There remains an adversity of interests here because the Planning Director made a "final determination" that "the evidence" showed Bolton's construction activity was covered by its existing permits, and Hualalai has an interest in arguing that the evidence showed otherwise. Namely, Hualalai has an interest in arguing that Bolton's construction activity exceeded the conditions of its existing grading and stockpiling permits (Permit Nos. 092524, 092525, and 092529) and, therefore, required an additional special permit.
>
> Analogous to the appeal in [Kona Old Haw. Trails Grp. v. Lyman], Hualalai's appeal also "retains vitality" because the appeal "possibly affords [it] an effective remedy[,]" that is, remand to the [Leeward Planning Commission] for a

24

> hearing to determine whether Hualalai's petition to intervene should be granted or denied. [69 Haw. 81, 87, 734 P.2d 161, 165 (1987)]. Thus, under the facts of this case, Appellees' withdrawal of Special Permit Application No. SPP-16-188 does not render moot Hualalai's appeal to this court.

150 Hawai'i at 254, 500 P.3d at 439.

Unlike in Hualalai, there is no existing construction nor a question whether such construction requires additional permitting. Rather, in this case, the 2021 RP and 2022 RP are now expired and KIUC is not currently using water under the permit. Rather, this case is similar to Carmichael, which dealt with environmental challenges to expired revocable water permits. In Carmichael, this court held that although the permits were expired, exceptions to mootness applied. 150 Hawai'i at 560-62, 506 P.3d at 224-26.

Here, we conclude as in Carmichael that two exceptions to the mootness doctrine apply.

1.  **The Capable of Repetition, Yet Evading Review Exception**

Under the "capable of repetition, yet evading review" exception to the mootness doctrine, "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit." Id. at 561, 506 P.3d at 225 (citation omitted).

25

Here, although this case is moot because the subject permit expired on December 31, 2022, the "capable of repetition" exception to the mootness doctrine applies. Like this court observed in Carmichael, "[b]ecause the BLNR's continuation decisions for revocable permits apply for only one calendar year at a time, those decisions 'evade full review' and no plaintiff would be able to complete a lawsuit seeking to void the continuation of a permit before the continuation itself expired." Id. Despite the expiration of the subject permit in the present case, the issues presently on appeal are capable of repetition if KIUC applies for another revocable permit for the same water resources (as it did for almost two decades).

The record in this case indicates that KIUC made varying representations to the Board regarding its likelihood of repairing the diversion structures and/or seeking another revocable permit in the future. At the December 10, 2021 Public Meeting, KIUC represented to the Board that it did have the budget to repair the damaged diversion structures and that it was monitoring market conditions to determine when the ultimate decision whether to make repairs would be made. Then, nearly a year later, KIUC represented to the Environmental Court that its failure to continue the RP "demonstrates KIUC will not be pursuing another revocable permit . . . [and] will instead

26

continue to pursue its [still-pending] application for a long-term [water] lease[,]" which it initiated in 2004.

Additionally, as Petitioners point out, the diversion structures and ditches remain in place, and KIUC affirmed its plans to resume diversions depending on cost and under a long-term lease. Petitioners also cite to a letter dated October 25, 2022, from KIUC to the Board, stating KIUC was not requesting an RP continuation for 2023, and was instead requesting an "access agreement for portions of the water transmission system located on State land . . . for purposes of maintenance only and no diversion" while KIUC continued to pursue a long-term lease. KIUC's letter represented to the Board that "[b]ecause of the significant estimated cost of repairs, KIUC will not undertake the work prior to obtaining a long-term lease." The record does not indicate whether KIUC was granted its request for an access agreement in lieu of a revocable water permit. In any event, the record demonstrates that KIUC maintains a strong interest to utilize in the future the water resources at issue in this case.

Thus, while it remains unclear whether KIUC will seek another revocable water permit for the Blue Hole diversion, such a scenario is capable of repetition based on the record before us. Further, as noted in Carmichael, the short-term nature of revocable water permits makes them prone to evasion of full review. 150 Hawai'i at 561, 506 P.3d at 225.

27

We conclude that the "capable of repetition yet evading review" exception to the mootness doctrine applies here.

## 2.  **The Public Interest Exception**

"In determining whether the public interest exception applies, this court considers[:] (1) the public or private nature of the question[s] presented, (2) the desirability of an authoritative determination for future guidance of public officers, and (3) the likelihood of future recurrence of the question[s]."  Id. (quoting Kaleikini v. Thielen, 124 Hawai'i 1, 13, 237 P.3d 1067, 1079 (2010) (internal quotation marks omitted)).  We conclude that the issues raised in Petitioners' appeal satisfy all three factors of the public interest exception.

First, although at first blush this case involves a private dispute between water users, the issues raised by Petitioners implicate overarching issues of alleged improper use and/or waste of public trust water resources, and obligations of permittees to abide by permit conditions, which affects a significant number of Kaua'i residents.  See id. ("The first factor considers whether the questions presented by the case are personal to the parties and of a private nature, or if they implicate broader political and legislative issues that affect a significant number of Hawai'i residents." (citation and internal quotation marks omitted)).  Moreover, this case also implicates

the Board's duties as trustee of Hawai'i's public trust water resources, particularly when continuing revocable water permits, ensuring conditions therein are met, and protecting against ongoing waste.  The issues implicated in this case have broad public import and affect.  See id.

Second, this case provides needed guidance to public officers for the future.  Like Carmichael, this case clarifies BLNR's authority when continuing revocable water permits under HRS § 171-55, including when it must provide contested case hearings to address alleged violations of RP conditions for a long-time permittee.  This case provides new guidance regarding the due process rights of similarly situated petitioners who were denied contested case hearings.

Third, questions of whether it is permissible for the Board to deny a request for a contested case hearing and/or to continue a revocable water permit, will recur.  This court acknowledged in Carmichael that "[d]isputes over the use of land and State resources are frequent in Hawai'i" and "disputes over revocable permits are likely to arise in the future."  Id. at 562, 506 P.3d at 226.  Moreover, the issue that Petitioners raised regarding violations of RP conditions, and how the Board should address such violations, is likely to recur in the future.

29

We conclude that the public interest exception to the mootness doctrine applies here.

**B.    Petitioners have injury-in-fact standing as identified by the Environmental Court.**

We next address the Board's argument that the ICA erred by holding that Petitioners had injury-in-fact standing, and doing so on different grounds than the Environmental Court without a determination that the Environmental Court committed plain error.  The Board also asserts the ICA erred by concluding that Petitioners established standing without demonstrating causation or redressability, in other words, without considering the last two factors for injury-in-fact standing.

We review the issue of standing *de novo*.  See PASH, 79 Hawai'i at 434, 903 P.2d at 1255.  As noted above:

> This court "evaluate[s] standing using the 'injury in fact' test requiring: (1) an actual or threatened injury, which, (2) is traceable to the challenged action, and (3) is likely to be remedied by favorable judicial action." Kilakila, 131 Hawai'i at 204, 317 P.3d at 38 (internal quotation marks omitted).  As we have noted, however, "where the interests at stake are in the realm of environmental concerns[,] we have not been inclined to foreclose challenges to administrative determinations through restrictive applications of standing requirements." Id. at 204-05, 317 P.3d at 38-39 (internal quotation marks omitted) (quoting [Citizens for the Prot. of the N. Kohala Coastline, 91 Hawai'i at 100-01, 979 P.2d at 1126-27]).

Hualalai, 150 Hawai'i at 258, 500 P.3d at 443.

We agree with the ICA that Petitioners have standing, but we do so on the grounds found by the Environmental Court. The narrow standing issue raised to the ICA was the Board's

30

argument that the Environmental Court assumed Petitioners had standing based on injury to the exercise of their native Hawaiian traditional and customary rights, but without considering how these interests would be harmed by continuing the RP or how a contested case hearing would provide a remedy. There was no challenge in the ICA to the type of injury involved.

We therefore conclude Petitioners have injury-in-fact standing on the same grounds identified by the Environmental Court (*i.e.*, the alleged negative effects of continuing the RP on Petitioners' exercise of their traditional and customary rights). Given the issue raised before it, the ICA should not have found standing on different grounds where no error in that regard was asserted. The question before the ICA was whether the alleged injury was "traceable to the challenged action" and was "likely to be remedied" by a contested case hearing. Id. at 258, 500 P.3d at 443. Although we have recognized "a variety of interests that, if injured, can form the basis for standing[,]" we have not required that multiple alleged injuries are needed to establish standing. Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 321-22, 167 P.3d 292, 314-15 (2007). Thus, we need not consider other types of alleged injury to Petitioners, including those relied upon by the ICA.

1. **Petitioners alleged judicially cognizable harm to their traditional and customary rights, traceable to the Board's continuation of the RPs.**

Petitioners' asserted to the Board, *inter alia*, that their traditional and customary rights were being negatively affected by the permits that had been issued to KIUC and they advocated against continuing the RPs for 2021 and 2022.

On two occasions the Board denied Petitioners' requests and petitions for contested case hearings on the 2021 and 2022 RPs. The RP permitted KIUC to "enter and use . . . water emanating from, and the water transmission system situate at[] Līhuʻe-Kōloa Forest Reserve . . . also known as the 'Blue Hole' diversion which is hereinafter referred to as the 'Water Resources.'" Condition A.1. of the RP provided that KIUC was permitted to use the water, and "use, operate, <u>repair and maintain</u> a portion of an existing government-owned water transmission infrastructure system including the Blue Hole diversion all for the purpose of generating hydroelectric power with [KIUC]'s two hydroelectric plants." (Emphasis added.) Condition A.8. of the RP provided that KIUC shall "<u>[r]epair and maintain</u> all building or other improvements now or hereafter part of the Water Resources." (Emphasis added.) Condition A.12 of the RP provided that KIUC shall "[n]ot make, permit, or suffer, any <u>waste</u> . . . of the Water Resources." (Emphasis added.) Condition A.22.b. provided that "[a]ny applicable

32

service charge to the cooperative members, by Grove Farm, shall be for the upkeep of the delivery system, not for the water."

Following the Board's oral denials of Petitioners' requests for contested case hearings, Petitioners filed written petitions asserting, *inter alia*, the nature and extent of Petitioners' interests affected by the Board's continuation of the RP, including multiple bases for standing. Petitioners' December 19, 2020 petitions were nearly identical and asserted that because the Board continued the permit despite KIUC's noncompliance with the conditions of the RP, their members were being "deprived of their rights to enjoy Wai'ale'ale Stream," and "are being further deprived of their ability to enjoy Traditional and Cultural practices in the Blue Hole area." Petitioners asserted that many of their members are cultural and traditional practitioners, who have and can speak to the public trust protections intended for the subject waters. They also asserted there was abundant evidence that the permit was not needed, there was "gross disrepair," and that KIUC has violated the conditions of the permit, including "transferring the water to others without permits" in violation of the permit. Petitioners sought relief in the form of revocation of the 2021 RP "with satisfaction of the terms and conditions of the RP, to include among others, removal of the dam diversions, cleaning

and [restoration] of the area and the natural flow of the streams." (Emphasis added.)

In Petitioners' December 20, 2021 petitions, they asserted their interests, and the harms thereto, in even greater detail, stating:

> The Board's action causes waters from the [Wai'ale'ale, Waikoko, Waiahi, 'Ili'ili'ula, I'ole, Hanamā'ula, Waiaka, and Wailua] streams to be diverted, leaving portions of some streambeds dry, increasing waters in other areas of the [sic] East Kaua'i, and facilitates a network of unsustainable practices that frustrate the ability of [Petitioners] to use and enjoy the environs, cultural and natural resources, and waters of Wai'ale'ale and its tributaries for the exercise of native Hawaiian traditional and customary rights, domestic uses, recreation, research, environmental uses, uses as [DHHL] beneficiaries, aesthetic purposes, and as KIUC ratepayers and County of Kaua'i Department of Water [KDOW] customers.

Petitioners also reasserted that KIUC was violating the terms and conditions of the RP (Conditions A.1, A.8, and A.22.b) because KIUC had not used diverted water for energy production since 2019, and was failing to maintain its diversion infrastructure.  Petitioners also note that despite the RP being conditioned on diverted water solely being used for hydroelectric power, they believed water was being inadvertently diverted by KIUC's diversion infrastructure for downstream use by Grove Farm and other businesses, which Petitioners asserted was another violation of the RP.

Petitioners sought relief in the form of a contested case hearing to protect their rights where they can "produce evidence and cross examine witnesses to further the development

34

of a full record before the Board prior to the [decision-making] on the RP request and conditions attached thereto." Petitioners also noted that "[d]uring the pendency of the contested case hearing, the Board's approval of the [2022 RP] should be vacated pending the contested case hearing."

Attached to Petitioners' petitions were supporting exhibits including eleven sworn declarations from Petitioners' members attesting, among other things, to the alleged impacts of the Board's continuation of the RP — including the Board's failure to require KIUC to comply with the RP conditions. Ten of the eleven sworn declarations were submitted by individuals who identified themselves as descendants of the aboriginal people who inhabited the Hawaiian Islands prior to 1778.

Many of the declarations explicitly attested to the impacts on Petitioners' members' exercise of native Hawaiian traditional and customary rights, including: "waste" of Waikoko and Waiʻaleʻale waters; dewatering of portions of the subject streams; and negatively impacting native bird, aquatic, and plant species and their habitats, and in turn limiting Petitioners' traditional and customary practices associated with those species, such as gathering of fallen feathers. The declarations asserted variously that the Board's actions impact cultural resources and practices via preventing "natural enjoyment of the stream, impacting hunters, gather[ers] and

other cultural practices of [the] community which also includes the sacred historical recognition of the Blue Hole as a natural Heiau" and as a "sacred wahi pana."

At least three of the declarations also attested to the impacts of the Board's continuation of the permit on the habitat of native animal and plant species in the subject streams; and "aesthetic damage to the[] [subject] streams in the [form of] interrupted mauka to makai flow."

Many of the declarations also attested to the "disrepair, damage, and reduction in flow" of the subject streams from KIUC's permitted diversion structures, and included Petitioners' members' observations of jutting rebar, decaying and dilapidated diversion structures, trash, and generally dangerous conditions for use and enjoyment of the streams.

Based on the record, we conclude that Petitioners sufficiently demonstrated injury to their traditional and customary practices and rights, and that the alleged injury was traceable to the Board's actions in continuing the RP.

2. **Petitioners' alleged injuries were redressable by the Board.**

The final prong of the injury-in-fact standing inquiry requires a determination that the alleged harm "is likely to be remedied by favorable judicial action."  Hualalai, 150 Hawaiʻi at 258, 500 P.3d at 443 (citation omitted).

36

The Board asserts that even if we determine that Petitioners have actual or threatened injuries, they remain without standing because the alleged injuries are redressable only by CWRM, and not by the Board. The Board contends that <u>all</u> of Petitioners claims are associated with instream flow standards and/or stream diversion structures, such that Petitioners are actually complaining of interim instream flow standards and "stream diversion works"[8] which are under the "exclusive" and "sole jurisdiction" of CWRM, pursuant to HRS Chapter 174C. The Board asserts that it is not "regulating water use when it" continues a revocable water permit under HRS § 171-55, but is simply carrying out "a mechanism by which the State may charge rent for use of public trust resources[.]" Under this argument, the Board seeks to be absolved of its responsibility and authority over permits and conditions which it issued under HRS § 171-58 and subsequently continued under

---

[8]    HRS § 174C-91 (2011) defines "stream diversion works" as "any artificial or natural structure emplaced within a stream for the purpose of diverting stream water."

HRS § 174C-92 (2011) provides that "[a]ny person owning or operating a stream diversion works within or outside of a water management area shall register such work with [CWRM]." HRS § 174C-93 (2011) provides, in relevant part, that "[n]o person shall construct or alter a stream diversion works, <u>other than in the course of normal maintenance</u>, without first obtaining a permit from [CWRM]." (Emphasis added.) HRS § 174C-94 (2011) provides, in relevant part, that "[w]ithin thirty days after the completion of construction or alteration of any stream diversion work, the permittee shall file a written statement of completion with the commission." HRS § 174C-95 (2011) entitled "Abandonment" provides that "[a]ny owner of any stream diversion work wishing to abandon or remove such work shall first obtain a permit to do so from the commission."

HRS § 171-55, and also its constitutional obligations as trustee of the State's public trust resources.

We agree with Petitioners that such an argument cannot stand.

The Board's public trustee obligations in this case stem from article XI, section 1 of the Hawai'i Constitution, which provides that all public natural resources are held in trust by the State for the benefit of the people:

> For the benefit of present and future generations, the State and its political subdivisions shall conserve and protect Hawaii's natural beauty and all natural resources, including land, water, air, minerals and energy sources, and shall promote the development and utilization of these resources in a manner consistent with their conservation and in furtherance of the self-sufficiency of the State.
>
> All public natural resources are held in trust by the State for the benefit of the people.

Haw. Const. art. XI, § 1; see also Haw. Const. art. XI, § 7 ("The State has an obligation to protect, control and regulate the use of Hawaii's water resources for the benefit of its people."); In re Water Use Permit Applications, 94 Hawai'i 97, 132, 9 P.3d 409, 444 (2000) (holding that article XI, section 1 and article XI, section 7 of the Hawai'i Constitution "adopt the public trust doctrine as a fundamental principle of constitutional law in Hawai'i").

HRS Chapter 171 establishes and prescribes, among other things, the Board's broad powers and authority over public lands and the resources thereon, including water. HRS § 171-1

38

et seq.  HRS § 171-3 (2011) provides that the Department, headed by BLNR, has the authority to "manage, administer, and exercise control over public lands, the water resources, . . . and all other interests therein and exercise such powers of disposition thereof as may be authorized by law."  HRS § 171-1 (2011) further defines "Land" as including "all interests therein and natural resources including water, minerals, and all such things connected with land, unless otherwise expressly provided."  HRS § 171-6 (2011) further enumerates the explicit powers held by the Board, which include the Board's authority to "[e]stablish additional restrictions, requirements, or conditions, not inconsistent with those prescribed in this chapter, relating to the use of particular land being disposed of, [and] the terms of sale, lease, license or permit" and, more broadly, to "[d]o any and all things necessary to carry out its purposes and exercise the powers granted in this chapter."

HRS § 171-58 confers authority on the Board to issue temporary one-year revocable permits "under those conditions which will best serve the interests of the State and subject to a maximum term of one year and other restrictions under the law[.]"  See Carmichael, 150 Hawai'i at 562-63, 506 P.3d at 226-27.  HRS § 171-55 establishes the Board's authority to potentially continue a revocable permit, stating:

> Notwithstanding any other law to the contrary, <u>the board of land and natural resources may issue permits</u> for the temporary occupancy of state lands or an interest therein on a month-to-month basis by direct negotiation without public auction, <u>under conditions and rent which will serve the best interests of the State, subject, however, to those restrictions as may from time to time be expressly imposed by the board.</u>  <u>A permit on a month-to-month basis may continue for a period not to exceed one year from the date of its issuance</u>; provided that the board may allow the permit to continue on a month-to-month basis for additional one year periods.

(Emphases added.)

As this court noted in <u>Carmichael</u>, the Board's role as trustee of the State's public natural resources is implicated when the Board exercises its discretion to continue revocable water permits pursuant to its statutory authority under HRS § 171-55.  150 Hawai'i at 562, 506 P.3d at 226 (holding that "[a]s a trustee of the public trust, the BLNR failed to demonstrate that it properly exercised the discretion vested in it by the constitution and the statute" when it authorized continuation of a revocable water permit under HRS § 171-55 without making findings of fact or conclusions of law that such disposition served the State's best interests).

Here, under HRS Chapter 171, the Board had the authority to issue the permit and to prescribe conditions on the permit which "best serve the interests of the State" pursuant to HRS § 171-58 (1991).  Moreover, the Board had the authority thereafter to continue the permit, after determining that such dispositions were "temporary" and that the permit was issued

40

"under conditions and rent which will serve the best interests of the State[.]" HRS § 171-55.  The Board also had the authority to require "restrictions as may from time to time be expressly imposed[.]"  HRS § 171-55.  The Board's authority to issue and continue the permit, with conditions and restrictions, establishes the Board's broad statutory authority, along with its constitutional public trust authority to address violations of the same.

We conclude that within the context of continuing the permit, BLNR had both statutory and constitutional authority to address alleged violations of the RP conditions -- including the disrepair and maintenance of the water system, and improper water diversion -- notwithstanding CWRM's jurisdiction and authority over implementation and administration of the state water code pursuant to HRS Chapter 174C.

Based on the foregoing, we conclude Petitioners have standing in this case.

C. **Petitioners were entitled to a contested case hearing.**

Petitioners assert that the ICA erred in declining to conduct a due process analysis under the Flores/Sandy Beach factors based on the ICA's conclusion that such an analysis was impossible where the "the record does not include evidence of the procedures actually used by BLNR" at the earlier December 11, 2020 Public Meeting.  Petitioners argue that a transcript of

41

the Board's December 11, 2020 Public Meeting was not required because BLNR's procedures "are presumed to have been in accord [with] HRS chapter 92, which governs public meetings, and Board rules of procedures under HAR [Title 13 Chapter 1]."

This court's decision in Flores, and its predecessor Sandy Beach, set forth a two-step analysis for determining whether there is a constitutional due process right to a contested case hearing: "(1) is the particular interest which claimant seeks to protect by a hearing 'property' within the meaning of the due process clauses of the federal and state constitutions, and (2) if the interest is 'property,' what specific procedures are required to protect it."  Sandy Beach, 70 Haw. at 376-77, 773 P.2d at 260 (citation omitted); see Flores, 143 Hawai'i at 125, 424 P.3d at 480.

For the second step, determination of the specific procedures required to satisfy due process requires an additional balancing of three factors: "(1) the private interest which will be affected; (2) the risk of an erroneous deprivation of such interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards; and (3) the governmental interest, including the burden that additional procedural safeguards would entail."  Sandy Beach, 70 Haw. at 378, 773 P.2d at 261 (citations omitted); see Flores, 143 Hawai'i at 126-27, 424 P.3d at 481-82.

As discussed below, we conclude that the ICA erred in declining to conduct a due process analysis under Flores/Sandy Beach, and Petitioners were entitled to a contested case hearing.

**1.  The ICA erred in declining to conduct a due process analysis under Flores/Sandy Beach.**

In the circumstances of this case, a transcript of the December 11, 2020 Public Meeting was not necessary for the ICA to conduct a due process analysis, because the pertinent Board decisions were made at the later December 10, 2021 Public Meeting.  A transcript for the December 10, 2021 Public Meeting is in the record.

At the December 10, 2021 Public Hearing, the Board (1) denied Petitioners' December 19, 2020 petitions on the 2021 RP; (2) denied Petitioners' request for a contested case hearing on the 2022 RP; and (3) granted the 2022 RP.  Petitioners' notice of appeal to the Environmental Court specifically stated that Petitioners were appealing from the Board's December 10, 2021 decisions.

The ICA is correct that the record does not contain a transcript of the earlier December 11, 2020 Public Meeting where the Board denied Petitioners' oral requests for a contested case hearing on the 2021 RP and granted the 2021 RP.  Eight days later, Petitioners submitted their written December 19, 2020

43

petition, which sought a contested case hearing on the 2021 RP.
This written petition was not decided until almost a year later,
at the December 10, 2021 Public Meeting.  This decision by the
Board encompasses the propriety of its earlier decision to issue
the 2021 RP without a contested case hearing.

The ICA thus erred by ignoring the later December 10,
2021 Public Meeting, where the relevant issues in this case were
decided by the Board.  The ICA should have addressed
Petitioners' due process right to contested case hearings under
the Flores/Sandy Beach factors.

2.    **A contested case hearing was "required by law" to
      protect Petitioners' cognizable property interests**.

"To have a property interest in a benefit, a person
clearly must have more than an abstract need or desire for
it.  He must have more than a unilateral expectation of it.  He
must, instead, have a legitimate claim of entitlement to it."
Sandy Beach, 70 Haw. at 377, 773 P.2d at 260 (citation omitted).

> The legitimate claims of entitlement that constitute
> property interests are not created by the due process
> clause itself.  Instead, "they are created and their
> dimensions are defined by existing rules or
> understanding[s] that stem from an independent source such
> as state law — rules or understanding[s] that secure
> certain benefits and that support claims of entitlement to
> those benefits."

In Re Application of Maui Elec. Co., Ltd., 141 Hawai'i 249, 260,
408 P.3d 1, 12 (2017) (quoting In re 'Iao, 128 Hawai'i 228, 241,
287 P.3d 129, 142 (2012)).

44

Petitioners have cognizable property interests under article XII, section 7 of the Hawai'i Constitution (traditional and customary rights) to satisfy the first step of the Flores/Sandy Beach analysis. Article XII, section 7 provides:

> The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights.

Some of Petitioners' members submitted declarations to the Board establishing that they are native Hawaiian and descend from the aboriginal inhabitants of the Hawaiian Islands before 1778, that they engage in traditional or cultural practices in the areas affected by the permit, and that they seek to protect the right to such practices. In Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res., 136 Hawai'i 376, 390, 363 P.3d 224, 238 (2015), this court recognized that the right to exercise native Hawaiian customs and traditions under article XII, section 7 was a property interest for which due process protections applied. See also Flores, 143 Hawai'i at 125-26, 424 P.3d at 480-81 (holding that under article XII, section 7, appellant had shown he sought to protect a constitutionally cognizable property interest); In re 'Iao, 128 Hawai'i at 240-41, 287 P.3d at 141-42 (recognizing that the exercise of native Hawaiian traditional and customary practices constitutes "property interests" for due process purposes).

We next turn to the second step of the Flores/Sandy Beach analysis, and the three factors to determine whether a contested case was required to protect the property interest in this case.  For the first factor (the property interest which will be affected), Petitioners have established their interest in engaging in traditional and customary practices in and around the Waiʻaleʻale and Waikoko streams, and have submitted evidence about the deprivation of those interests by ongoing diversion and/or waste of water and the disrepair of improvements and diversion structures.  We conclude that the first factor weighs in favor of a contested case hearing.

For the second factor (risk of erroneous deprivation of property interest through the procedures used and the probable value of other procedural safeguards), Petitioners articulated their challenge to the Board's December 10, 2021 decisions in their December 20, 2021 petitions.  Although the December 10, 2021 Public Meeting provided Petitioners with notice and an opportunity to be heard, the format of the meeting did not permit Petitioners a meaningful opportunity to challenge information presented to the Board.  At a contested case hearing Petitioners would be able to produce evidence and cross-examine witnesses to develop a full record for the Board to consider in deciding whether, for instance, conditions of the RP have been violated, if so what should be done, and given actual

46

circumstances whether to continue the RP. In this case, the opportunity to cross-examine witnesses and provide rebuttal evidence was critical where the parties provided conflicting factual representations regarding various relevant considerations for continuing the RP.

In Carmichael, this court stated that "when appraising the legislative history of HRS chapter 171 as a whole, it is clear that the BLNR's power to issue and continue revocable permits under HRS § 171-55 was intended to be narrowly exercised." 150 Hawai'i at 564, 506 P.3d at 228. In that case, this court emphasized that the Board, as a public trustee of Hawai'i's water resources, "is duty bound to demonstrate that it has properly exercised the discretion vested in it by the constitution and the statute." Id. at 566, 506 P.3d at 230 (citation and internal quotation marks omitted). Here, Petitioners asserted, and the DLNR acknowledged in its recommendation to the Board, that the circumstances surrounding KIUC's water diversion and use had changed significantly due to the damage in 2019 to its diversion structures, resulting in the inability for KIUC to divert water for its Hydropower Plants. Despite major changes to KIUC's ability to divert water and power its Hydropower Plants (the underlying purpose for the permit), the Department recommended that the Board continue

KIUC's RP for 2022, <u>without any updated conditions</u> reflecting the changed circumstances or the concerns raised by Petitioners.

We conclude that, as to the second factor, there was a risk that Petitioners were deprived of their property interest due to the procedures used by the Board and there is probable value in holding a contested case hearing. Despite the short period of the RPs, the Board had renewed the permit for almost two decades.  KIUC's diversion structures sustained severe damage in 2019, making them inoperable and changing the circumstances surrounding the RP.  Further, Petitioners' evidence included information about the poor condition of permit improvements and waters being wasted, which are potential violations of permit conditions.  The procedural protections of a contested case hearing would guard against the risk of erroneous deprivation of the constitutionally protected property interest at stake, and would also address the harms raised by Petitioners in their petitions and declarations.

Finally, as to the third factor, the Board argued to the Environmental Court that it has a strong interest against holding a contested case hearing because of the cost of such a hearing, and because of the "State's substantial interest in efficient land management[.]"  We recognize the State's concern and it is not inconsequential.  However, in the circumstances of this case and given the magnitude of the water resources

authorized by the 2021 RP and 2022 RP, a contested case hearing is warranted for the Board to fulfill its legal obligations, including its public trust duties. Moreover, nothing in the record indicates that Petitioners were parties to a prior contested case hearing on the issues raised in this case. Hence, it appears that a contested case hearing here would not be duplicative or overly burdensome. See Flores, 143 Hawai'i at 127-28, 424 P.3d at 482-83 (holding that the appellant was not entitled to a contested case hearing because he previously had extensive participation in a related contested case hearing seeking to vindicate the same interests and expressing similar concerns). We conclude that the third factor also weighs in favor of a contested case hearing.

On balance, we hold that a contested case hearing was required by law to protect Petitioners' property interests and constitutional due process rights.

Accordingly, this case is remanded to the Board for a contested case hearing. Because the 2021 RP and 2022 RP have expired, the contested case hearing should address Petitioners' claims that permit conditions were violated prior to issuance of the 2021 RP and 2022 RP -- including the alleged resulting disrepair or degradation of improvements under the permit and the alleged diversions of water or waste -- and the asserted impacts on Petitioners' property interests. The Board should

49

require actions by KIUC that the Board would have required before issuing the 2021 RP and 2022 RP after a contested case hearing, to address prior violations of permit conditions and the resulting harms to Petitioners. These steps are consistent with the requirement under HRS § 171-55 that the Board may issue temporary permits "under conditions . . . which will serve the best interests of the State" and the Board's public trust obligations under article XI, section 1 of the Hawai'i Constitution. See Carmichael, 150 Hawai'i at 566-67, 571, 506 P.3d at 230-31, 235 (holding that BLNR's authority under HRS § 171-55 and its public trust duties required that it make findings of fact and conclusions of law demonstrating that revocable water permits served the best interests of the State, and remanding the case to the circuit court to determine how best to apply environmental assessment requirements to revocable permits).

## IV. CONCLUSION

Based on the foregoing, we vacate the ICA's Judgment on Appeal entered on July 29, 2024. Further, based on the combined effect of Part I and Part II of this opinion, the Environmental Court's Final Judgment entered on May 8, 2023, is

affirmed.  We remand this case to the Board for further proceedings consistent with this opinion.

| | |
|---|---|
| Lance D. Collins<br>(Bianca K. Isaki, | /s/ Mark E. Recktenwald |
| on the briefs)<br>for petitioners | /s/ Sabrina S. McKenna |
| | /s/ Todd W. Eddins |
| Colin J. Lau<br>Miranda C. Steed | /s/ Lisa M. Ginoza |
| Deputy Attorneys General | |
| for respondent | /s/ Vladimir P. Devens |



**PART II: The Environmental Court had HRS § 91-14 jurisdiction to review the Board's proceedings culminating in the Board's decisions to renew the permit for 2021 and 2022.**
(By: Devens, J., with whom Recktenwald, C.J., McKenna and Eddins, JJ., join)

We initially note that at the time the ICA issued its decision in this case, this court's opinion in Sierra Club v. Bd. of Land & Nat. Res. (Sierra Club I), No. SCWC-22-0000516, 2025 WL 2556067 (Sept. 5, 2025), which decided a similar jurisdictional issue, had not been published.  Given this court's opinion in Sierra Club I, we hold in the present case that the Environmental Court had HRS § 91-14 jurisdiction to review the Board's administrative proceedings that culminated in the decisions to continue the permit for 2021 and 2022.

As we observed in Sierra Club I, this court takes a functional approach to "'what can be considered a contested case hearing for purposes of judicial review, consistent with the policy of favoring judicial review of administrative actions'"

and to what an agency's final decision is.  Sierra Club I, at *40 (quoting Kilakila, 131 Hawai'i at 214, 317 P.3d at 48 (Acoba, J. concurring) (internal quotation omitted)).[9]  Thus, that view shapes a court's determination as to whether an agency's action is a final decision that ends an administrative proceeding.  Our decision in Sierra Club I affirms that our case law's examination of what constitutes an agency's "final decision" does not insulate an agency's act consummating the administrative decision-making process from HRS § 91-14 review.  Id. at *37-38.  A final decision or order is one that ends the proceedings, "leaving nothing further to be accomplished."  Id. at *40 (see Hualalai, 150 Hawai'i at 256, 500 P.3d at 441

---

[9]     Kilakila involved the approval of a conservation district use permit.  In that case, this court framed the issue as:

> whether a circuit court has jurisdiction over an HRS § 91–14 appeal when an agency makes a final decision on a given matter--in this case, an application for a conservation district use permit--without either granting or denying an interested party's request for a contested case hearing on the matter.

131 Hawai'i at 195, 317 P.3d at 29.  Petitioner in that case argued that BLNR's decision to grant the permit at a public meeting "constituted final agency action that was therefore appealable."  Id. at 197, 317 P.3d at 31.

In undertaking the PASH analysis for HRS § 91-14 jurisdiction there, we recognized that BLNR's vote to approve the conservation district use permit determined the permit applicant's right, duties, and privileges.  This court held that where the Board was required to hold a contested case hearing before deciding on a permit application, the appellate court has jurisdiction over the Board's decision on the permit, even if a contested case hearing was not held.  Id. at 203, 206, 317 P.3d at 37, 40.

(cleaned up); Gealon v. Keala, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979)).

In PASH, this court discussed the requirements for jurisdiction under HRS § 91-14:

> first, the proceeding that resulted in the unfavorable agency action must have been a "contested case" hearing—i.e., a hearing that was 1) "required by law" and 2) determined the "rights, duties, and privileges of specific parties"; second, the agency's action must represent "a final decision and order," or "a preliminary ruling" such that deferral of review would deprive the claimant of adequate relief; third, the claimant must have followed the applicable agency rules and, therefore, have been involved "in" the contested case; and finally, the claimant's legal interests must have been injured—i.e., the claimant must have standing to appeal.

79 Hawaiʻi at 431, 903 P.2d at 1252.

In the instant case, the ICA held that the Environmental Court exceeded its jurisdiction by concluding that "the failure of [BLNR] to issue findings of fact and conclusions of law made it impossible to determine whether [continuation of the Permit] 'served the best interests of the State' pursuant to HRS § 171-58(c)[.]"[10]  Kiaʻi Wai o Waiʻaleʻale, 2024 WL 3221038, at *8.  The ICA's reasoning was that "BLNR's decisions to continue the Permit for 2021 and 2022 were made in public meetings, not contested cases."  Id.  Thus, the ICA concluded,

---

[10]  As noted by the ICA, continuation of the permit was under HRS § 171-55 and not HRS § 171-58.  See Carmichael, 150 Hawaiʻi at 562-63, 506 P.3d at 226-27.  Where the Environmental Court's decision cites to HRS § 171-58(c), we construe that court's reference to the statutory requirement for the Board to indicate how revocable permit conditions disposing of water rights "best serve the interests of the State" requirement as inclusive of HRS § 171-55's "best interests of the State" explanatory requirement.

"[t]he Environmental Court did not have jurisdiction to review the propriety of those decisions in this HRS § 91-14 appeal." Id. In support, the ICA cited to their published opinion in Sierra Club v. Bd. of Land & Nat. Res., 154 Hawaiʻi 264, 550 P.3d 230 (App. 2024), as corrected (Oct. 31, 2024), which we reversed in part in our Sierra Club I opinion.

BLNR does not dispute that the Environmental Court had jurisdiction over Petitioners' appeal of the Board's denial of their requests for a contested case hearing, which was followed by the Board's vote to continue the permit for both years in the same proceedings. The Board's contention is that the ICA was correct in concluding that the Environmental Court did not have jurisdiction "to review the merits of the decision to continue the permit."

It is clear from the record that the other PASH requirements are met to establish jurisdiction under HRS § 91-14 over the Board's denials of Petitioners' requests for contested case hearings. Thus, we review the ICA's determination that the Board's continued proceedings following the denials of the contested case hearing requests were not within the Environmental Court's HRS § 91-14 jurisdiction to review.

The dissent's view is that "the final agency decision for purposes of jurisdiction under HRS § 91-14 was the Board's denials of Petitioners' requests for contested case hearings."

54

Dissent at 8-9. This view affirms the ICA's determination in this case, following the ICA's opinion in Sierra Club I, that the Board's votes to renew KIUC's revocable permit occurred in public meetings, "not in contested cases," and therefore those permit renewals are not reviewable by our courts under HRS § 91-14. Kia'i Wai o Wai'ale'ale, 2024 WL 3221038, at *8. Based on our case law, and our recent opinion in Sierra Club I, this is incorrect.

We note that the Board's denials were immediately followed by their votes to continue the permit which determined the rights, duties and privileges of KIUC. In December 2020, BLNR conducted a decision-making process on public meeting Item D-5, the continuation of KIUC's revocable permit S-7340. After Petitioners' oral request for a contested case hearing, which BLNR denied, BLNR proceeded to approve the continuation of KIUC's permit for 2021. And in December 2021, BLNR undertook a decision-making process on the continuation of KIUC's permit for 2022 as Item D-2 on their meeting agenda. Petitioners submitted written testimony on D-2, which included a request for a contested case hearing on the permit renewal for 2022. At the meeting, Petitioners orally renewed their request for a contested case hearing before the Board approved the permit continuation for 2022. BLNR again denied Petitioners' request and then voted to renew the permit for 2022. In both instances,

KIUC, an involved party in these agency decision-making proceedings, had its rights, duties, and privileges determined with the Board's respective votes to grant the permit continuations for 2021 and 2022.

As we noted in Sierra Club I, the agency's wrongful denial of a contested case hearing followed by a vote to grant a revocable permit left no further agency decision-making to be accomplished on the matter.  Our standing analysis here recognizes that the constitutional violation of Petitioners' rights stems from the injury the permit renewals, effective for 2021 and 2022, caused to Petitioners' rights to conduct their traditional and cultural practices.

On this record, following Sierra Club I, we hold that the Environmental Court had HRS § 91-14 appellate jurisdiction to review BLNR's decisions denying Petitioners' contested case hearing requests and continuing the permit.  The Environmental Court properly noted that the Board's procedures continuing the permit did not include any "best interests of the State" findings.  We respectfully disagree with the dissent's premise that the Environmental Court reached the merits of BLNR's decisions to continue the permit.  We view the Environmental Court's conclusion as based on further procedural deficiencies rather than the merits of BLNR's decisions approving the permit. This is supported by the Environmental Court's Final Judgment

which dismissed Petitioners' requests to address the merits of their claim that the Board violated HRS Chapter 343 by twice continuing the permit.



/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

/s/ Vladimir P. Devens